# R. J. Straight *v.* Noah Wilson and Rebecca B. Wilson, Appellants.

*Contract—Fraud—Evidence.*

Defendant bought an interest in oil territory from plaintiff giving in payment fifteen notes falling due at regular intervals of three months from the date of the purchase, secured by mortgage. He paid the first nine notes without objection, and obtained an extension on the thirty months' note. Afterwards, for his wife, he bought out his partners in the original purchase. Suit having been brought upon the mortgage to secure the notes, he defended on the ground that he was induced to buy by fraudulent misrepresentations of the producing capacity of the land. The representations made by plaintiff related mainly, if not exclusively, to a period seven months before the purchase, and to the capacity at which the well was put into the " shut down movement," an arrangement between oil producers to regulate and reduce certain portions of their productions. The court refused to admit in evidence pipe line statement showing the amount of oil credited to plaintiff from the property for two years prior

to the purchase. *Held*, (1) that as the pipe line statements did not represent production, but delivery for the market, they were irrelevant and properly excluded; (2) that there was no evidence on which a jury would have been justified in finding any fraudulent misrepresentation, and there was no error in directing a verdict for plaintiff.

Argued May 7, 1896. Appeal, No. 344, Jan. T., 1896, by defendants, from judgment of C. P. McKean Co., Feb. T., 1894, No. 353, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Scire facias sur mortgage. Before MORRISON, J.

At the trial it appeared that on June 1, 1888, defendants purchased from plaintiff an interest in oil land. Defendants gave fifteen notes for $500 dollars each, payable at intervals of three months from the date of the purchase. Defendants paid the first nine notes, but defaulted on the tenth note, and when suit was brought under mortgage defended on the ground of false representations made by the plaintiff as to the producing capacity of the land.

Other facts appear by the opinion of the Supreme Court.

At the trial the following agreement was submitted:

It is agreed that the statements hereto attached are correct statements from the books of the National Transit Company, United Pipe Line Division, of. all the oil run into the lines of said company from the property described in the writ of scire facias in the above case to the credit of R. J. Straight, between the 1st day of June, 1886, and the 1st day of June, 1888, and that the quantity so run to his credit is seven eighths of all the oil run from said property into said lines between the said dates, and of all the oil from the same property run to the credit of Noah Wilson between June 1, 1888, and March 10, 1894, and that the quantity so run is one third of seven eighths of the whole quantity run into said lines from said property between said dates.

And it is further agreed, that these statements shall be received in evidence on the trial of the above cause with the same force and effect as if the books of said company were themselves produced in evidence and duly proved.

In pursuance of this agreement, defendant's counsel offered to prove, by the pipe line statements mentioned in the agreement the quantity of oil run to the credit of R. J. Straight between

the 1st day of June, 1886, and the 1st day of June, 1888, and that the quantity so run to his credit was seven eighths of all the oil run from the property described in the mortgage in suit; also the quantity of oil run from the same property in the same pipe line company to the credit of Noah Wilson between June 1, 1888, and March 10, 1894, and that the quantity so run was one third of seven eighths of the whole quantity run into said pipe line from said property between said dates; the purpose of the offer being to show that the alleged statements made by R. J. Straight, that the property in question was producing thirteen and three fourths barrels either on November 1, 1887, at the time of the shut down movement, or on June 1, 1888, at the time of the purchase of the property by the defendants, were not true, but that on the contrary the property in question at those times was producing a very much less quantity and that the production of Mr. Straight from the wells on the property in question was much less than thirteen and three fourths barrels, to wit: About eight and one half or nine barrels.

Plaintiff's counsel objected to the offer as incompetent and irrelevant, not being the best evidence, and there being no evidence of any representations as to the production of the wells on the part of the plaintiff either on June 1, 1888, or on November 1, 1887.

The Court: Isn't there some evidence that Mr. Straight said that at the time of the shut down they were doing thirteen and three fourths barrels. I think this offer now is incompetent as the case stands on the defendant's own showing. We sustain the objection and exclude the offer as a whole. Exceptions sealed for the defendants. [1]

The court directed a verdict for plaintiff. Defendants appealed.

*Errors assigned* among others were, (1) rulings on evidence, quoting the bill of exceptions; (6) in directing a verdict for plaintiff.

*Geo. A. Berry,* of *Berry & Edgett,* for appellants.—An allegation of fraud opens a wide door to the admission of evidence: DeWolf v. McNabb, 1 Atl. Rep. 440; Pfeil v. McCallin, 1 Atl. Rep. 654; Cover v. Manaway, 115 Pa. 338; Neff v. Landis,

110 Pa. 204; Yerkes v. Wilson, 81* Pa. 9; 2 Pomeroy's Eq., sec. 902; Clark v. Everhart, 63 Pa. 347; Young v. Edwards, 72 Pa. 257. Where there has been fraud on the vendee in a contract of sale he may rescind on the discovery of the fraud or he may defend against payment of the purchase money to the extent to which he has been injured: Rice v. Olin, 79 Pa. 391. Under the plea of the failure of consideration, as distinguished from the plea of set-off, the defense is equitable, inherent in all the securities founded on the same consideration: Eby v. Elder, 122 Pa. 342.

*R. B. Stone*, with him *Wolf & George* and *Mullin & Mullin*, for appellee.—Wilson could have learned, if he did not know, whether the wells were partly shut in. If they were shut in neither he nor Straight could know their normal production. If they were not shut in Wilson could have learned their production by gauging them, or, as he says, by inspecting a pipe line statement. The means of knowledge as to the production of the wells being equally open he is charged with knowledge of all that by the use of such means he could have ascertained: Brotherton v. Reynolds (35 W. N. C. 330), 164 Pa. 134; Clapp v. Hoffman, 159 Pa. 535; Mehaffy v. Ferguson, 156 Pa. 156; Smith v. Richards, 13 Peters, 42; Slaughter v. Gerson, 13 Wall. 383; Farnsworth v. Duffner, 142 U. S. 47; Shisler v. Baxter, 109 Pa. 443.

If an offer of evidence is objectionable in part it is not error to reject it as a whole: Mundis v. Emig et al., 171 Pa. 417; Evans v. Evans, 155 Pa. 572; Smith v. Bank, 104 Pa. 518; Wharton v. Douglass, 76 Pa. 273.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896:

The appellant bought an interest in oil territory from plaintiff, and gave in payment, inter alia, fifteen notes for $500 each, falling due at regular intervals of three months from the date of the purchase, June 1, 1888, and all secured by the mortgage now in suit. The first nine notes running to twenty-seven months were paid without objection, and when the thirty months' note came due appellant sought and obtained an extension of time on it, and up to this point made no objection or complaint about his purchase. Some time after this he also

bought out for his wife his partners in the original purchase. When however this action was brought on the mortgage for the balance of the purchase money, he defended on the ground that he was induced to buy by fraudulent misrepresentations of the producing capacity of the land.

An objection so stale as this, and coming under such circumstances, would need to be sustained by convincing evidence to be worthy of any consideration at all. What was offered by appellant was not convincing either in kind or quantity. The representations made by plaintiff related mainly if not exclusively to a period seven months before the purchase, and to the capacity at which the well was put into the " shut-down movement," an arrangement between oil producers to regulate and reduce certain portions of their production.

Appellant complains particularly of the refusal to admit in evidence the pipe line statements showing the amount of oil credited to plaintiff from this property for two years prior to the purchase. Whether the statements are in themselves the best evidence of what they purport to indicate, was not clearly shown in the case, but as counsel had agreed that they should be used in place of the pipe line books from which they were taken, we do not think they could be rejected on that ground. But the evidence which they contained was not in itself relevant to any issue in the case. They did not represent production but delivery for market. The only representations by plaintiff that were proved were as already said as to the production at which the well was put into the "shut-down." The statements did not profess to show production at all but only the " runs," or amount of oil carried by the pipe line for the owner. No doubt if applied to a considerable period of time, the " runs " represent the production, but inferentially only, for their accuracy as to this purpose would depend on other factors such as the working to full capacity, the storage in the tanks, the partial or complete run off, etc.

There was no evidence on which a jury would have been justified in finding any fraudulent misrepresentations, and the learned judge was right in directing a verdict for plaintiff.

Judgment affirmed.